UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEON M. JACKSON,

        Plaintiff,

v.                                 Case No. 2:05-cv-55
                                 HON. R. ALLAN EDGAR

G. HILL, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Leon M. Jackson, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Health Service Manager G. Hill, Nurse Practitioner Unknown Vanlandschoot, Deputy Warden D. Edlund, Sergeant Unknown Ling, Corrections Officer Unknown Dove, Registered Nurse Unknown Hyrkas, Captain Unknown Schwab, and Registered Nurse Betty Kotila, all of whom are employed at AMF.

In Plaintiff's original and amended complaints, he claims that he has been diagnosed with obstructive sleep apnea syndrome, and that he was treated with a tonsillectomy and was prescribed a Continuous Positive Airway Pressure ("CPAP") machine to use at night. Plaintiff complains that he was transferred to AMF on March 30, 2004, and received the machine in April. After using the machine for approximately two weeks, Plaintiff felt that something was wrong because he was still waking in the middle of the night gasping for air. Plaintiff kited health services, asking for help. On May 6, 2004, Plaintiff told the physician assistant about his CPAP machine, and

she stated that she would have a nurse turn it down, but that she did not know anything about how the machine worked.  On May 12, 2004, Plaintiff wrote a grievance against Nurse Glenn Richards for failing to help Plaintiff with his CPAP machine.  Defendant Kotila came to see Plaintiff about the grievance and Plaintiff explained his problems breathing at night.  Defendant Kotila told Plaintiff that he would just have to "deal with it" and walked away.  Plaintiff sent a medical kite on May 28, 2004, and received a response asking if he felt he had a cold or sinus problem.  The response instructed Plaintiff to re-kite if he wished to see the nurse.  Plaintiff then wrote a grievance regarding the lack of power and lighting in his cell at night, claiming that he could not see well enough to operate his CPAP machine.  Plaintiff received a response to this grievance on June 8, 2004, stating that he would need to turn in the machine so that it could be sent out for repairs and that he had refused to turn in the machine.  Plaintiff states that the reason he refused to send out his CPAP machine was because he was told that they did not know when it would be back and he was not going to be given a replacement to use while it was gone.  Plaintiff states that if he was at the Standish Maximum Correctional Facility, he would be able to be seen by a specialist and could have the machine fixed promptly and correctly.

On July 9, 2004, Plaintiff claims that he re-kited health services about his machine and was told that someone would look at it.  Plaintiff then wrote a grievance on Defendants Edlund, Ling, and Dove for failing to provide him with adequate treatment or a long enough cord for his CPAP machine.  Plaintiff claims that his power cord was so short that he was required to sleep on the floor with his head next to his toilet in order to use the CPAP machine.  On September 1, 2004, Plaintiff kited to see a doctor and was told that he had to see the nurse first.  Plaintiff was instructed to re-kite if he wanted to see the nurse.  Plaintiff re-kited on September 3, 2004, asking to see a doctor, stating that his machine had been checked, but that he still felt as if there was some sort of

blockage in his nose.  Plaintiff stated, "I want medical attention, you pick."  The response to Plaintiff's kite stated that he would be seen by the nurse on approximately September 8, 2004, and that it was impolite to call the nurse a "dick."

On October 8, 2004, Plaintiff wrote a grievance on Defendants Hill and Vanlandschoot for denying him proper medical treatment and not allowing Plaintiff to see a doctor or specialist despite the fact that he had been seen by a nurse on at least three separate occasions within the same month.  Plaintiff claims that MDOC policy requires that a prisoner be seen by a doctor in such a situation.  The response to this grievance stated that Plaintiff had a pulmonary consult on November 14, 2003, and a sleep study on January 7, 2004, and that another specialty consult was not indicated at that time.  Plaintiff alleges that he continued to kite health care regarding his breathing problems, but was told that his CPAP machine had already been checked and was set according to doctor's orders.

Presently before the Court is Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or For Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #30, #41, and #46).  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that Plaintiff has not exhausted his administrative remedies with regard to Defendants Hill, Edlund, Ling, Schwab, Dove, Coppler or Perttu, so that Plaintiff's complaint should be dismissed pursuant to the total exhaustion rule.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741.  A district court must enforce the exhaustion requirement sua sponte.  *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

- 4 -

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.  *Brown*, 139 F.3d at 1104.  In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted.  *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000).  A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I.  *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003).  Where a prisoner has set forth a claim in his Step I grievance, he may present additional factual details at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal.  *Id.* Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion.  *Id.* at 576 n.4.  However, contrary to Defendants' assertion, the exhaustion requirement does not mandate that Plaintiff name each of the involved parties in the step II and III grievance appeals.  So long as the parties are named at step I, Plaintiff need only state the reason for his appeal at steps II and III.  Therefore, Defendants' contention that Plaintiff failed to exhaust his claims against Defendants Hill, Edlund, Ling, Dove, Coppler and Perttu because he did not specifically name them in the step II and III appeals is without merit.  Each of these parties was named in a step I grievance[1] and the denial of those grievances was

---

[1] Defendant Perttu is named as "Case Manager" in grievance numbers AMF 04-08-02-172-03F and AMF 04-08-02-181-28A, which are attached as exhibits to his complaint.

appealed to steps II and III.  Therefore, Plaintiff has sufficiently demonstrated exhaustion of these parties.

However, a careful review of the record shows that Plaintiff has failed to demonstrate exhaustion with regard to Defendant Schwab.  None of the step I grievances attached as exhibits specifically mention him, either by name or title.  Because Plaintiff's complaint contains both exhausted and unexhausted claims, the Court will dismiss his action pursuant to the "total exhaustion" rule.  Under the total exhaustion rule, the presence of an unexhausted claim results in the dismissal of the entire action.  *Jones Bey v. Johnson, et al.*, 407 F.3d 801 (6th Cir. 2005).  Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies.  *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).  Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee.  *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997).  Accordingly, Defendants are entitled to dismissal of Plaintiff's action without prejudice.

Defendants also claim that the evidence does not support Plaintiff's claim of deliberate indifference to his medical needs.  As noted above, Plaintiff's complaint alleges that he has been diagnosed with sleep apnea and other respiratory problems and his CPAP machine is malfunctioning and is not being properly serviced.  In addition, Plaintiff claims that he was not given a long enough power cord for his machine, so that if he wanted to use it at night, he had to sleep on the floor next to his toilet.  Plaintiff states that Defendants repeatedly denied him the ability to see a specialist, despite the fact that he had continuing medical problems and made numerous requests for medical treatment.  Plaintiff contends that his condition is quite serious and can result in death.  Plaintiff alleges that, as a result of the Defendants' misconduct, he continues to be at risk of dying

or suffering permanent damage because of his sleep apnea. Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment to the United States Constitution.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more

- 7 -

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001); *Jones v. Martin*, 5 Fed. Appx. 434, *cert. denied*, 534 U.S. 833 (2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997).

Plaintiff alleges that he was seen by a specialist, Dr. Patten, for a pulmonary consult on November 14, 2003, and a sleep study was conducted at Foote Hospital in Jackson, Michigan. Plaintiff's use of the CPAP machine was instituted because of the findings of the sleep study. Plaintiff was to begin using the machine at "14 cm. of pressure." Defendants state that Plaintiff was transferred to AMF on March 30, 2004, and a CPAP machine was ordered upon his arrival. Defendant Hill attests that Plaintiff was provided with the machine and given instructions for its use. (*See* affidavit of Defendant Hill, Exhibit J to Defendants' motion for dismissal and/or summary judgment, docket #31.)

Plaintiff began complaining that the machine was not functioning properly and that he believed the pressure was set too high. The CPAP machine setting and functioning were checked by Apria Health Care in Houghton, Michigan, on August 19, 2004, and January 7, 2005. On both occasions it was determined that the machine was operating properly and that the pressure setting was in accordance with the recommendation of Dr. Patten. Defendants further state that Plaintiff was evaluated by the nurse and the Medical Service Provider on numerous occasions, in response to Plaintiff's complaints. The Medical Service Provider determined that no further testing or referrals were indicated, but that Plaintiff might need pulmonary function testing in the future. (*See*

affidavit of Defendant Hill, Exhibit J to Defendants' motion for dismissal and/or summary judgment, docket #31.)

Plaintiff claims that the power cord to his CPAP machine was so short that he could not sleep on the bed, but had to sleep on the floor with his head next to the toilet.  Defendant Edlund attests that she was not involved in the initial approval for Plaintiff's extension cord, and that once the problem was brought to her attention, she had maintenance find a longer cord for Plaintiff's use. In addition, Defendant Edlund states that Plaintiff could have slept on his bed, even with the shorter cord, if he had placed his head on the opposite end of the bed.  (*See* affidavit of Defendant Edlund, Exhibit H to Defendants' motion for dismissal and/or summary judgment, docket #31.)  Defendant Ling attests that Plaintiff did not want to switch positions so that his head would be at the opposite end of his bed and that he chose to sleep on the floor.  (*See* affidavit of Defendant Ling, Exhibit I to Defendants' motion for dismissal and/or summary judgment, docket #31.)

Plaintiff claims that he told Defendant Hyrkas that he needed 24 hour power for his CPAP machine on August 17, 2004, and that his cord was too short.  However, Defendant Hyrkas does not recall ever speaking to Plaintiff on August 17, 2004, and states that she did not do medication rounds that night.  (*See* affidavit of Defendant Hyrkas, Exhibit K to Defendants' motion for dismissal and/or summary judgment, docket #31.)   As noted above, Plaintiff claims that Defendant Kotila told him that he would just have to "deal with it" when he complained about his breathing problems on May 12, 2004.  Defendant Kotila does not recall ever speaking to Plaintiff on this date.  Defendant Kotila attests that Plaintiff was informed that the CPAP machine needed to be sent to the vendor to be checked on May 28, 2005, but that Plaintiff refused to turn in the machine.  (*See* affidavit of Defendant Kotila, Exhibit L to Defendants' motion for dismissal and/or summary judgment, docket #31.)

Defendant Ling recalls unit staff calling the control center and reporting that Plaintiff was complaining about the extension cord being too short. This cord was the only one approved for use by the Warden and Defendant Edlund. Defendant Ling questioned staff about the adequacy of the cord length and was told that it was not too short if Plaintiff would change positions so that his head was on the end of the bunk closest to the power outlet. Defendant Ling attests that it was Plaintiff, not staff, who said that he would have to sleep on the floor because of the cord length. Moreover, if the cord had really been as short as Plaintiff claimed, he would have had to sleep near his foot locker and the cell door, not the toilet as he claims. Defendant Ling states that he observed that the combination of the extension cord, the CPAP machine cord, and the air output hose of the CPAP machine would allow Plaintiff to lie on his bed without difficulty. Defendant Ling further attests that Plaintiff was angry with the set up because it no longer allowed for all night power for the entire wing. Defendant Ling contends that when all night power was available on the wing, prior to the extension cord being approved, Plaintiff received several minor misconduct tickets for misusing the power by watching television after official lights out. Finally, Defendant Ling states that once a longer cord was approved, it only lasted a few days because when it was not promptly picked up by staff one morning, Plaintiff pulled the cord into his cell and flushed it down the toilet. (*See* affidavit of Defendant Ling, Exhibit I to Defendants' motion for dismissal and/or summary judgment, docket #31; and affidavit of Defendant Perttu, Exhibit C to Defendants Dove, Coppler, and Perttu's motion to dismiss and/or for summary judgment, docket #46.)

Defendants assert that Plaintiff has a history of gastrointestinal problems (GERD) and cardio problems which could be causing his medical symptoms. In addition, Defendants attach copies of Plaintiff's medical records which show that he was seen by health care on numerous occasions for his complaints. (*See* Plaintiff's medical records, Exhibit N to Defendants' motion for

dismissal and/or for summary judgment, docket #31.)  Plaintiff's medical records show numerous entries which indicate that Plaintiff was seen by a variety of health care professionals on various occasions for a varied complaints.  Plaintiff was subjected to many different lab and x-ray examinations, including a thyroid test, stress test, chest x-rays, and a test for cardiac enzymes, and his CPAP machine was checked by Apria Health Care on August 19, 2004.  (*See* Plaintiff's medical records, pp. 1-42.)

As noted above, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake*, 537 F.2d at 860 n. 5.  A review of the record in this case reveals that Plaintiff received medical attention on numerous occasions as a result of his complaints.  The fact that Plaintiff did not receive the exact attention he felt he needed, such as to be seen by a specialist and to be transferred to another prison, does not rise to the level of an Eighth Amendment violation.  Further, Defendants have come forward with evidence to show that Plaintiff's claim that he was forced to sleep on the floor in order to use his CPAP machine was a ruse to force Defendants to allow around the clock power to the unit.  Plaintiff has failed to sustain his burden of proof in response to this showing.  In the opinion of the undersigned, this case is comparable to the situation discussed by the Sixth Circuit in *Westlake* because Plaintiff has received some medical attention and the dispute is over the adequacy of the treatment.  Therefore, because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," the undersigned recommends that Defendants be granted summary judgment on Plaintiff's Eighth Amendment claims regarding the alleged denial of medical care.  *Id.*

Defendants state that they are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999). In this case, for the reasons set forth above, Plaintiff has not shown that a constitutional violation occurred. Therefore, the undersigned finds that Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, it is recommended that Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or For Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #30, #41, and #46) be granted and this case be dismissed in its entirety.

In addition, because Plaintiff has failed to show that his constitutional rights were violated, the undersigned recommends that his motions to supplement his complaint and for extension of time to serve the complaint (docket #54 and #56) be denied.

- 13 -

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


                                        /s/ Timothy P. Greeley_____
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  March 1, 2006

- 14 -